UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ROBERT HOLMES,
                                    *Petitioner,*

            v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
VIRGINIA INTERNATIONAL TERMINALS,
                                    *Respondents.*

No. 01-1761

On Petition for Review of an Order
of the Benefits Review Board.
(00-592)

Argued: April 1, 2003

Decided: June 12, 2003

Before NIEMEYER, MOTZ, and GREGORY, Circuit Judges.

Dismissed by unpublished per curiam opinion.

### COUNSEL

**ARGUED:** Avery Tillinghast Waterman, Jr., PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C., Newport News, Virginia, for Petitioner. Richard John Barrett, VANDEVENTER BLACK, L.L.P., Norfolk, Virginia, for Respondents. **ON BRIEF:** Jennifer West Vincent, PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C., Newport News, Virginia, for Petitioner.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Robert Holmes filed a claim against his employer, Virginia International Terminals ("VIT"), under the Longshore and Harbor Workers Compensation Act (the "LHWCA"). Holmes claims that VIT violated the LHWCA by failing to pay his disability claims derived from an alleged work-related psychological injury. An Administrative Law Judge ("ALJ") heard Holmes' claim and concluded that his disability claims were not compensable under the LHWCA. Holmes then appealed that decision to the Benefits Review Board ("BRB"), which affirmed the ALJ's decision pursuant to Public Law 106-554. After the BRB denied his motion for reconsideration, Holmes filed this petition for review. For the reasons that follow, we conclude that we lack jurisdiction to decide the substantive merit of Holmes' claim and therefore dismiss his petition for review.

I.

VIT employed Holmes as a "header," the leader of a gang of three workers responsible for loading and unloading cargo. Bruce Sanders was Holmes' immediate supervisor. Holmes claims that Sanders started harassing him in 1996 by: (1) opposing Holmes' promotion to header; (2) refusing to grant Holmes' gang "desirable overtime assignments"; and (3) falsely accusing Holmes' gang of damaging freight. Holmes reported Sanders' behavior to Greg Kubu, Sanders' immediate supervisor, but Kubu did not take any action.

Holmes claims that, on Friday, February 6, 1998, Sanders falsely accused him and his crew of not doing any work that day. Later the same day, Sanders accused Holmes of sleeping on the job. Despite Holmes' protestations that he was not sleeping on the job, Sanders reported him to Kubu. Kubu discussed the Holmes matter with Kevin Howard, the union business agent and president, who scheduled a

meeting for the following Monday, February 9, 1998, to discuss Sanders' allegations with Holmes, Sanders, and company management. Holmes testified that he then became the "butt of jokes and harassment" from his co-workers, who allegedly teased him about "sleeping on the job."

On Monday morning, Holmes learned that his meeting with Howard and company management had been rescheduled for later that evening because Howard had work to do. At the end of the afternoon, Holmes learned that the evening meeting was also rescheduled. Holmes testified that after VIT cancelled the evening meeting, he began to suffer anxiety because he was concerned about why VIT was "stalling and refusing to meet with him." (Appellant's Br. at 12). Holmes' physician, Dr. Sutton, examined Holmes that evening and diagnosed him with depression and anxiety disorder, ordered him to stay home from work, and referred him to a mental health specialist. Dr. Leonard Holmes, a psychologist, and Dr. Lewis Taylor, VIT's physician, both confirmed that Holmes was suffering from job-related stress and depression. Both Dr. Holmes and Dr. Taylor recommended that Holmes not work in his current job setting. Holmes remained out of work until September 28, 1998, at which time he returned to VIT and accepted an offer of a lower paying position at another job site.

More than a year and a half later, on August 4, 1999, Holmes finally met with company management to discuss the February 6, 1998 incident. According to Holmes, this meeting did not resolve any of the issues surrounding Sanders' allegations. It was during this meeting that Holmes learned that he was being replaced as gang header. Shortly thereafter, he filed a claim under the LHWCA, alleging that he had incurred a work-related psychological injury, and that as a result, VIT was required to pay temporary total disability from February 9, 1998, to September 28, 1998, and permanent partial disability from September 29, 1998, to the present.

In August 1999, Administrate Law Judge Richard Malamphy heard Holmes' claims. The ALJ issued a decision on February 3, 2000, denying Holmes' request for benefits. In his decision, the ALJ concluded that Holmes was not entitled to benefits because VIT's response to Sanders' "sleeping on the job accusation" was a legitimate personnel action. The ALJ further determined that "the temporal rela-

tionship between Holmes' illness and the events of February 6 and 9, 1998[,] indicate that it was the legitimate personnel action that resulted in Holmes' disability." Specifically, the ALJ noted that "only after the events of February 9, 1998, which have already been established as a legitimate personnel action, did Holmes seek any kind of psychological treatment." Thus, the ALJ concluded that Holmes was not entitled to benefits because his injury "was wholly a result of a legitimate personnel action."

On March 7, 2000, Holmes appealed the ALJ's decision to the BRB. Because the BRB failed to issue a decision by the one-year anniversary of Holmes' appeal to the BRB, the ALJ's decision was deemed affirmed by operation of law on March 7, 2001.[1] However, on March 16, 2001, the BRB issued a decision reversing and remanding the ALJ's decision.

On April 4, 2001, the BRB issued an order withdrawing its March 16, 2001 decision. In the April 2001 order, the BRB noted that it had failed to issue an opinion within the one-year time limitation imposed by law, and thus, the ALJ's decision was deemed affirmed by operation of law on March 7, 2001. Holmes then filed a motion for reconsideration on April 9, 2001,[2] which the BRB denied on May 7, 2001. The BRB explained that "[i]nasmuch as the administrative law judge's decision was affirmed by operation of law on March 7, 2001, the Board is without authority to review the [ALJ's] findings of fact and conclusions of law by way of a motion for reconsideration." On June 8, 2001, Holmes filed this petition for review.

---

[1]Public Law 106-554, § 1(a)(1)[Title 1] provides, in relevant part, "[t]hat any such decision pending review by the Benefits Review Board for more than 1 year shall be considered affirmed by the Benefits Review Board on the 1-year anniversary of the appeal, and shall be considered the final order of the Board for purposes of obtaining a review in the United States courts of appeals. . . ."

[2]It was unclear from the record whether Holmes filed his motion for reconsideration on April 6, 2001, or April 9, 2001. However, at oral argument Holmes' counsel confirmed that the motion for reconsideration was filed on April 9, 2001.

## II.

Before we can reach the merits of Holmes' claim, this Court must first determine whether it has jurisdiction to decide the issue presented. *See Betty B Coal Co. v. DOWCP*, 194 F.3d 491, 495 (4th Cir. 1999) ("[W]e have a special obligation to satisfy ourselves, before deciding anything substantive, that we do have jurisdiction."). To this point, VIT argues that this Court lacks jurisdiction because Holmes did not timely file his petition with this Court. For the reasons that follow, we agree.

20 C.F.R. section 802.406 governs the time period in which a petitioner may petition this Court for a review of a BRB decision. Under § 802.406, "[a] decision rendered by the Board pursuant to this subpart shall become final 60 days after the issuance of such a decision. . . ." A motion for reconsideration timely filed, however, tolls the deadline for filing a petition for review. Thus, "[i]f a timely request for reconsideration has been filed, the 60-day period for filing such petition for review will run from the issuance of the Board's decision on reconsideration." 20 C.F.R. § 802.406. Motions for reconsideration must be filed with the BRB within 30 days from the filing of the BRB's initial decision. *See* 20 C.F.R. § 802.407 ("Any party-in-interest may, within 30 days from the filing of a decision . . . request reconsideration of such decision by those members who rendered the decision.").

In this case, the BRB affirmed the ALJ's decision by operation of law on March 7, 2001, the one-year anniversary of Holmes' appeal to the BRB. Public Law 106-554 requires:

> [A]ny such decisions pending a review by the Benefits Review Board for more than 1 year shall be considered affirmed by the Benefits Review Board on the 1-year anniversary of the filing of the appeal, and shall be considered the *final* order of the Board for purposes of obtaining a review in the United States courts of appeal[ ] *sic*. . . .

LHWCA, Pub. L. No. 106-554, § 1(a)(1), 114 Stat. 2763, 2763A-10 (2000) (emphasis added). Applying the plain language of Public Law 106-554 to the facts in this case requires this Court to conclude that

the BRB's March 16, 2001 written opinion is void because the BRB affirmed the ALJ's decision by *final* order on March 7, 2001, the one-year anniversary of Holmes' appeal to the BRB.**3** Thus, under § 802.406, March 7, 2001, is the date from which the statute of limitation should begin to run for any petition for review filed with this Court.

Holmes had 60 days from March 7, 2001, or until May 6, 2001, to petition this Court for review of the ALJ's decision. *See* 20 C.F.R. § 802.406. However, Holmes did not file his petition for review with this Court until June 8, 2001. Thus, his petition for review was not timely, and this Court does not have jurisdiction to decide the substantive merit of his claim.

Holmes attempts to dissuade this Court from finding his petition untimely by arguing that his April 9, 2001 motion for reconsideration tolled the time for filing a petition for review with this Court. He contends that under § 802.406, the time in which to file an appeal with this Court should run from May 7, 2001, the date the BRB denied his motion for reconsideration. To bolster his argument, Holmes relies on the Ninth Circuit's ruling in *Ramey v. Stevedoring Services of America*, 134 F.3d 954 (9th Cir. 1998). In that decision, the Ninth Circuit held that a petitioner may file a motion for reconsideration of BRB decisions rendered under Public Law 106-554. *Id.* at 959 (holding that

---

**3**Holmes argues that, pursuant to § 802.407, the BRB's March 16, 2001 written decision on the merits of Holmes' appeal may be considered a "de facto" or "sua sponte" reconsideration of its affirmance of the ALJ's decision under Public Law 106-554. We find this argument unpersuasive. At the time the BRB issued its March 16, 2001 decision, it was unaware that it had affirmed the ALJ's decision by operation of law on March 7, 2001. This is evident not only from the BRB's April 4, 2001 order, vacating its March 16 decision, but also from its May 7, 2001 order, which denied Holmes' motion for reconsideration, believing that it was "without authority to review the administrative law judge's findings of fact and conclusions of law by way of a motion for reconsideration." Regardless of whether § 802.407 would permit the BRB to reconsider its own decision under these circumstances, it is clear from the facts of this case that the BRB's March 16, 2001 opinion was not a reconsideration of the March 7, 2001 final order.

"[n]othing in Public Law 104-134[4] . . . purports to deprive parties of . . . [filing] motions for reconsideration").

In *Ramey*, however, the petitioners had filed *timely* motions for reconsideration. Here, Holmes' motion for reconsideration was filed on April 9, 2001, more than 30 days after the BRB's March 7, 2001 final order. Holmes' motion for reconsideration, therefore, was untimely and did not toll the running of the statute of limitation for filing his petition for review with this Court.

## III.

Because Holmes filed his petition for review more than 60 days after the BRB's March 7, 2001 decision, this Court lacks jurisdiction to decide the substantive merits of Holmes' petition. Accordingly, the petition is hereby

*DISMISSED*.

---

[4]In *Ramey*, the Ninth Circuit interpreted a predecessor statute to Public Law 106-554.